UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MOHAMED SALEH KUSSEM**, *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civil Action No. 21-cv-1441 (TSC)<br>) |
| **ANTONY J. BLINKEN**, in his official capacity as United States Secretary of State, *et al.*, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION

Plaintiffs Mohamed Saleh Kussem ("Mohamed"), Nagib Mohamed Kussem ("Nagib"), and Ali Mohamed Saleh Kasem ("Ali") have sued U.S. Secretary of State Antony Blinken, U.S. Attorney General Merrick Garland, Assistant Secretary of State for Consular Affairs Ian Brownlee, U.S. Ambassador to Egypt Jonathan Cohen, and a John Doe Consular Officer from the U.S. Embassy in Cairo, Egypt, all in their official capacity. Plaintiffs seek to immigrate to the United States, and they allege that Defendants have failed to adjudicate Nagib's and Ali's visa applications within a reasonable amount of time in violation of the Administrative Procedure Act ("APA"). ECF No. 1, Compl. ¶¶ 1–3. Plaintiffs petition for a writ of mandamus to compel Defendants to adjudicate their visa applications. Compl. ¶ 3. Defendants moved to dismiss, ECF No. 4, Defs.' Mot. to Dismiss, and for reasons explained below, the court will GRANT Defendants' motion.

### I.  BACKGROUND

Mohamed is a U.S. citizen residing in Kentucky. Compl. ¶ 4. His children, Nagib and Ali, are citizens and residents of Yemen who seek to immigrate to the United States.

Compl. ¶¶ 5–6.  On January 14, 2004, Nagib and Ali received approval of their I-130 Petitions for Alien Relatives based on their relationships to Mohamed.  Compl. ¶¶ 16–17.  They applied for immigrant visas in May 2015, after which their applications were transferred to various consulates before reaching the U.S. Embassy in Cairo, Egypt.  Compl. ¶¶ 1, 18.  In March 2018, they completed their immigrant visa interviews at the U.S. Embassy in Cairo, Egypt, but their applications were subsequently denied under Presidential Proclamation 9645.  Compl. ¶¶ 19–21.

Then-President Trump issued Presidential Proclamation 9645 on September 24, 2017, banning citizens of seven countries, including Yemen, from entering the United States.  *See* Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry Into the United States by Terrorists or Other Public Safety Threats, 82 Fed. Reg. 45,161 (Sept. 24, 2017).  The Proclamation established a case-by-case waiver system under which "consular officers may grant waivers to a foreign national" if the foreign national demonstrates that denial would result in undue hardship, entry would not pose a threat, and entry would be in the national interest.  *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91 (D.D.C. 2020); 82 Fed. Reg. 45,161, 45,168.  The Proclamation was upheld by the Supreme Court in *Trump v. Hawaii*, 138 S. Ct. 2392, 2423 (2018).

In March 2020, due to the COVID-19 pandemic, the State Department suspended routine visa services at all U.S. Embassies and Consulates.  *See* Suspension of Routine Visa Services, https://travel.state.gov/content/travel/en/News/visas-news/suspension-of-routine-visa-services.html (last updated July 22, 2020).  As of November 19, 2021, the Bureau of Consular Affairs was attempting to "reduc[e] wait times . . . while also protecting the health and safety of . . . staff and applicants."  *See* Visa Services Operating Status Update, https://travel.state.gov/content/travel/en/News/visas-news/visa-services-operating-status-

update.html (last updated Nov. 19, 2021).  Local restrictions and conditions continue to limit consular services and Embassies "have broad discretion to determine how to prioritize visa appointments."  *Id.*

On January 20, 2021, President Biden signed Presidential Proclamation 10141, ending the travel restrictions under Proclamation 9645.  Compl. ¶ 22.  On January 22, 2021, the State Department issued guidance for immigrant visa applicants who were previously refused under the Proclamation:

> [I]mmigrant visa (IV) applicants who were previously refused due to either [Proclamations] 9645 or 9983 and were determined not to qualify for a waiver before January 20, 2020, may reapply for a visa by submitting a new visa application (DS-260) and paying a new visa application processing fee.  In the alternative, IV applicants refused due to either [Proclamations] 9645 or 9983 who were determined not to qualify for a waiver on or after January 20, 2020, may request their local embassy or consulate to reconsider their case within one year of the date of their waiver refusal without submitting a new application or paying a new visa application processing fee, consistent with Department regulations.  IV applicants who were refused due to either [Proclamations] 9645 or 9983 and whose eligibility for a waiver was still being evaluated as of January 20, 2021, will continue to have their applications processed.  Embassies and consulates are prioritizing the adjudication of applications for those individuals who, as of January 20, 2021, were awaiting an outcome from the [Proclamations] 9645/9983 waiver process.

Rescission of Presidential Proclamations 9645 and 9983, U.S. Dep't State, https://travel.state.gov/content/travel/en/News/visas-news/rescission-of-presidential-proclamations-9645-and-9983.html (last updated Mar. 10, 2021).

Plaintiffs allege that after President Biden rescinded Proclamation 9645 and the State Department promulgated the subsequent guidance, Nagib and Ali "made numerous inquiries with the U.S. Embassy in Cairo, Egypt to resume processing of their cases."  Compl. ¶ 23. Plaintiffs do not say whether Nagib and Ali reapplied by submitting new visa applications after a waiver qualification or requested reconsideration after a waiver denial as provided in the

3

guidance. They only allege that since they made "numerous inquiries," "Defendants have yet to resume processing" their visa applications. *Id.* ¶ 24. In May 2021, approximately four months after President Biden rescinded Proclamation 9645, Plaintiffs brought this action, alleging that Defendants unreasonably delayed processing and adjudication of Nagib's and Ali's visa applications for over six years, causing them to endure financial, emotional, and familial hardships. *Id.* ¶¶ 25, 29, 37.

Specifically, Plaintiffs argue that Defendants have a duty to adjudicate their applications within a reasonable period of time and that by failing to do so, Defendants have violated the APA. 5 U.S.C. § 555(b); 5 U.S.C. § 701 *et seq*. Plaintiffs also seek a writ of mandamus compelling Defendants to either adjudicate Nagib's and Ali's applications or provide Plaintiffs with a timeline by which adjudication will take place. Compl. ¶¶ 1–3, 14–15.

Defendants have moved to dismiss, arguing that the "delay" in adjudication—which they define as the approximately four-month period between the recission of travel restrictions under Proclamation 9645 and the date Plaintiffs filed this suit—is not unreasonable given the unique difficulties faced by consular offices during the COVID-19 pandemic. Defs.' Mot. to Dismiss at 2. In the alternative, Defendants argue that three Defendants—Attorney General Garland, Secretary of State Blinken, and Assistant Secretary of State for Consular Affairs Brownlee—should be dismissed because they have no role in adjudicating visa applications and therefore could not provide the relief sought. *Id.* at 4–6.

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) for failure to state a claim "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint should state a "short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts to state a claim that is plausible on its face by alleging facts that, if assumed to be true, would allow the court to draw "reasonable inference[s] that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015); *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 677–78 (2009). The court presumes the truth of a plaintiff's factual allegations, *see Iqbal*, 556 U.S. at 679, and construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted) (citation omitted).

### III.   ANALYSIS

#### A.   APA Claim

The APA requires that "within a reasonable time, each agency shall proceed to conclude a matter presented to it" and permits a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 555(b), 706(1). A court evaluating a claim of unreasonable delay must "consider whether the agency's failure to respond is 'so egregious' as to warrant relief." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 147 (D.D.C. 2021) (quoting *Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 79 (D.C. Cir. 1984)).

Before the court can analyze the unreasonableness of the alleged delay, it must first resolve the parties' dispute about the length of time that has elapsed. Plaintiffs contend that the court's analysis should start at May 2015, when Nagib and Ali first applied for visas. Compl. ¶¶ 1, 18–25. This proposed start date, however, ignores the fact that Nagib's and Ali's 2015 applications have already been adjudicated. According to Plaintiffs, in March 2018, a "John Doe" Consular Officer at the U.S. Embassy in Cairo interviewed both Nagib and Ali and

subsequently notified them that their applications were "refused under then existing Proclamation 9645." *Id.* ¶ 21. Plaintiffs do not assert that those denials were unlawful at the time they were issued. *Id.*

In analogous cases, courts in this jurisdiction have held that the "unreasonable delay" clock begins to run once a visa applicant has requested a waiver after application denial under Proclamation 9645. *See Mirbaha v. Pompeo*, 513 F. Supp. 3d 179, 182 (D.D.C. 2021) (determining that the clock began to run for an applicant's APA and mandamus claims once he submitted a waiver); *Kangarloo v. Pompeo*, 480 F. Supp. 3d 134, 141 (D.D.C. 2020) (deciding the clock began to run once a waiver request was submitted). Because the government adjudicated Nagib's and Ali's 2015 visa applications in March 2018, the court will not factor in the time before the denial under Proclamation 9645 in determining whether the delay is unreasonable. Instead, the relevant time period begins when Plaintiffs requested a waiver.

Plaintiffs allege that after Proclamation 9645 was rescinded and the State Department's issued subsequent guidance, Plaintiffs made "numerous inquiries" regarding their applications. *See* Compl. ¶ 23. They do not say when, or how they made those inquiries. For purposes of the motion to dismiss, the court will draw a reasonable inference in Plaintiffs' favor and assume that their "numerous inquiries" included the necessary waiver request under the State Department's January 2021 guidance. The court will also assume—for purposes of the motion to dismiss—that Plaintiffs sent their waiver requests soon after the State Department announced the policy change, as early as January 2021.

Next, the court must determine when the delay clock stops. In analogous cases, courts have considered that the "delay" timeframe runs until the court issues its opinion. *See, e.g.*, *Mahmood v. U.S. Dep't of Homeland Sec.*, No. CV 21-1262 (RC), 2021 WL 5998385, at *6–7

(D.D.C. Dec. 20, 2021) (analyzing twenty-five month delay reflecting time between USCIS's last action and the issuance of the court's opinion) (citing *Brzezinski v. U.S. Dep't of Homeland Sec.*, No. CV 21-376 (RC), 2021 WL 4191958, at *4 n.3 (D.D.C. Sept. 15, 2021) (analyzing seventeen-month delay corresponding to time between "the last Government action" and the opinion's issuance)). Accordingly, the court finds that the relevant timeframe is the thirteen-month period between the end of January 2021, when the court will assume Plaintiffs began making their "numerous inquiries" to the U.S. Embassy in Cairo, and the issuance of the court's opinion today.

In determining whether agency action has been unreasonably delayed, the D.C. Circuit analyzes six factors from *TRAC*, 750 F.2d at 80 (citations omitted):

(1) the time agencies take to make decisions must be governed by a "rule of reason";

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also consider the nature and extent of the interests prejudiced by delay; and

(6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*TRAC*, 750 F.2d at 80.

   1. <u>Factors One and Two</u>

The first *TRAC* factor is the "most important" and "carries the most weight." *See In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008); *Mahmood*, 2021 WL 5998385, at *7

(citation omitted).  The second *TRAC* factor "provides that the content of such a rule [of reason] may be found in a 'timetable or other indication . . . in the enabling statute.'" *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014) (quoting *TRAC*, 750 F.2d at 80).  The first two factors are "typically consider[ed]" together because they both analyze whether there is "sufficient 'rhyme [and] reason'" in explaining the agency response time.  *Dastagir v. Blinken*, No. 1:20-CV-02286 (TNM), 2021 WL 2894645, at *3–4 (D.D.C. July 9, 2021) (quoting *Ctr. for Sci. in the Pub. Int.*, 74 F. Supp. 3d at 300).

With regard to the first two factors, Congress has not provided a statutory or regulatory timeframe in which to adjudicate visa applications, instead giving agencies "wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017) (citations omitted).  "Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, No. CV 20-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) (citation omitted).  As established above, the delay for adjudication in this case was approximately thirteen months from the time Plaintiffs began making "numerous inquiries" about their previously denied applications until today's opinion.

Given the "significant national security interests involved in assessing waiver applications and the compelling governmental interest in allowing the agency to balance its competing priorities as it sees fit," a thirteen-month delay is not unreasonable.  *See Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020) (holding a two-year delay in adjudicating visa waiver eligibility is not unreasonable); *Bagherian*, 442 F. Supp. 3d at 96 (same but twenty-five-month delay); *Skalka*, 246 F. Supp. 3d at 153–54 (stating that a two-year processing delay "does not typically require judicial intervention"); *Ghadami v. U.S. Dep't of Homeland Sec.*, No. CV 19-00397 (ABJ), 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) (finding that "it would be out

of step with the weight of decisions across the country if it drew the line for APA purposes at twenty-five months"). As a starting point, this case law weighs in Defendants' favor.

However, "[w]hether a 'rule of reason' exists for agency action 'cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Tate*, 513 F. Supp. 3d at 148 (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)). Here, Plaintiffs' factual allegations regarding the State Department's processing of Nagib and Ali's applications do not establish a "transparent violation[ ] of a clear duty to act[,]" *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000), or delay "so egregious as to warrant mandamus[,]" *Core Commc'ns, Inc.*, 531 F.3d at 855. Defendants also argue that the reasonableness of any delays is further supported by the COVID-19 pandemic, which has forced embassies and consulates to operate at reduced capacity to ensure the safety of U.S. officials. Defs.' Mot. to Dismiss at 2–3. As such, the first and second *TRAC* factors weigh in Defendants' favor. *See Ctr. for Sci. in the Pub. Interest*, 74 F. Supp. 3d at 300 (finding that the first two *TRAC* factors weighed in the defendants' favor where the challenged processing timeline was subject to an "identifiable rationale").

2. Factors Three and Five

The third and fifth *TRAC* factors—whether health and welfare are at stake and the nature of the interests prejudiced by the delay—are typically analyzed together and weigh in Plaintiffs' favor. Nagib and Ali allege that they have endured "significant financial, emotional, . . . familial," and medical hardships as a result of the delay in adjudication. Compl. ¶ 29; ECF No.

5, Pls.' Opp'n at 14. They have also been separated from their father in a country that has been experiencing a humanitarian crisis for the last several years. Compl. ¶ 2.

Defendants recognize the processing delay has "profoundly impacted the lives of Plaintiffs and their family," but argue that visa application processing and adjudication has generally been delayed to "prevent the spread of COVID-19 and protect the safety of U.S. officials." Defs.' Mot. to Dismiss at 11–12. Defendants do not specifically explain how State Department policies regarding COVID-19 safety have impacted conditions at the U.S. Embassy in Cairo such that it would have been unable to process and adjudicate Plaintiffs' requests. When weighing Defendants' concerns—made only in the abstract—against Plaintiffs' alleged harms, which this court must accept as true, the court finds that factors three and five weigh in Plaintiffs' favor.

3. Factor Four

The fourth *TRAC* factor considers the effect that expediting action on Plaintiffs' visa applications would have on other agency activities of higher or competing priority. This factor weighs in Defendants' favor. Defendants argue that requiring immediate adjudication of the Plaintiffs' visas would "simply 'reorder' a queue of applicants seeking adjudication." *Tate*, 513 F. Supp. 3d at 149 (quoting *Sarlak*, 2020 WL 3082018, at *6) (citation omitted). In response, Plaintiffs argue that Defendants have not provided any data as to where Plaintiffs fall in the queue and that their applications may already be at the front. Pls.' Opp'n at 15.

Even if Plaintiffs are near the front of the queue, "a judicial order putting [Plaintiffs] at the head of the queue simply moves all others back one space and produces no net gain." *In re Barr Labs*, 930 F.2d 72, 75 (D.C. Cir. 1991). "While the effect of an individual case would be minimal, the accumulation of such individual cases being pushed by judicial fiat to the front of

the line would erode the ability of agencies to determine their priorities." *Tate*, 513 F. Supp. 3d at 150.  Filing a federal lawsuit alone "should not give . . . any advantage." *Gong v. Duke*, 282 F. Supp. 3d 566, 569 (E.D.N.Y. 2017).

    4. <u>Factor Six</u>

The sixth and final *TRAC* factor concerns whether there is impropriety behind the agency delay.  The court "need not find impropriety to hold the agency action is unreasonable." *TRAC*, 750 F.2d at 80.

Plaintiffs have not alleged any impropriety, and a "mere . . . delay is insufficient to show impropriety." *See Chowdhury v. Blinken*, No. 1:21-CV-1205-RCL, 2022 WL 136795, at *5 (D.D.C. Jan. 14, 2022).  Defendants deny that they have engaged in any impropriety, and instead contend that the delay is the natural consequence of work limitations "caused by the pandemic and the plethora of applications seeking visas." Defs.' Mot. to Dismiss at 13.  Nonetheless, Defendants suggest that they could be "more forthcoming with information regarding the Application and its status." *Id.*  Because Plaintiffs have not alleged bad faith, and because Defendants offer reasonable explanations for their actions, the court finds that this factor weighs in Defendants' favor.

Ultimately, upon consideration of all the *TRAC* factors, the court finds that Plaintiffs have not alleged sufficient facts to show that Defendants unreasonably delayed agency action, and therefore will grants Defendants' motion to dismiss Plaintiffs' APA claim.

**B. <u>Mandamus Claim</u>**

Mandamus relief is proper only if: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005) (quoting *Power v. Barnhart*, 292

F.3d 781, 784 (D.C. Cir. 2002)).  Plaintiffs' APA and mandamus claims are derived from the same theory—that Defendants unreasonably delayed the adjudication of Nagib's and Ali's visas.  Accordingly, the same *TRAC*-factor analysis applies to both claims.  *See Tate*, 513 F. Supp. 3d at 148 n.7; *see also Skalka*, 246 F. Supp. 3d at 152 ("The standard by which a court reviews . . . agency inaction is the same under . . . the APA and the Mandamus Act.").  Because Plaintiffs fail to establish a valid claim for unreasonable delay under the APA, their claim for writ of mandamus—premised on the same theory of delay—also falls short of the 12(b)(6) bar.[1]

### IV.  CONCLUSION

For the reasons explained above, the court will GRANT Defendants' motion to dismiss.

Date:  March 7, 2022

_____
TANYA S. CHUTKAN
United States District Judge

---

[1] Because the court will dismiss Plaintiffs' lawsuit for failure to state a valid claim for relief, the court need not address Defendants' alternative argument that the court lacks subject matter jurisdiction over three of the Defendants.